Good morning, your honors. Vincent Mayo for the appellant, Carmen Flores Castro. May it please the court. Carmen requests that the district court judge's order be reversed and the magistrates upheld based on the fact that this is a case of wrongful retention, not of wrongful removal. Her position is based on the following. Aren't we really dealing with an issue of first impression in our circuit about what the meaning of wrongful removal versus wrongful retention is? I believe we are, your honor, and the issue is in terms of the, in our opinion, in terms of the authorization, was she, was Bertha authorized to remove the child from the country of Mexico? Or was it that she had removed the child without authorization? Fairly enough, and that is a situation that we have here, and based on... You're saying she had authorization to remove the child? Yes, your honor. According to the August 30 of 2017 order, the Jalisco court specifically stated that Carmen Bertha could be outside of Mexico with the child if she had a representative to see after her interest in the Jalisco proceedings, which... I thought the Jalisco court's October order contradicts your reading of the August 30 order because it says specifically that ZFMZ was, in quotes, illegally taken, in quotes, out of the country, which suggests that it was illegal at the time she was taken, does it not? I understand, your honor. Courts have long held that the actions dictating the wrongful act are key in the determination of whether or not it is wrongful retention or wrongful removal. In our case, we have a specific order from the Jalisco court in August 30 of saying that Bertha could, in fact, have the child outside the state of Mexico. That's not what the district court found, was it? I'm sorry, your honor, say again? That's not what the district court found. Correct. The district court made a very broad statement that it was based on the order of the Jalisco court. Our position is, and we have two contradictory orders, that we should look to the order that has a specific, in terms of the facts, and that would be the August 30 order. What do you have to show? Don't you have to show that the district court, in this case, is finding was clearly erroneous? Correct, your honor, and we believe that it is based on that August 30 order. The fact that it clearly, unequivocally said that Bertha could be, could have the child out of the country of Mexico as long as she had someone to see after her interest in the proceedings, and told her to return the child by September 8th, which she had not, and then subsequently sent a letter on September 13th stating that she had no intention of returning the child to Mexico. So, as I said, we had the issue in terms of Bertha was not prohibited from leaving Mexico with a child on August 30th. She was permitted to be outside the country with a child until September 8th. There was no evidence presented at the time of the evidentiary hearing that she did not intend to return herself or the child to Mexico. Therefore, as the Jalisco court ordered Bertha to return the child to Mexico no later than August, September 8th, 2017, and Carmen filed her hate petition on September 7th, 2018, less than a year had passed, meaning that the district court was prohibited from making a determination of whether or not the child was settled in the U.S. There should have been an automatic return of the child at that point. Based on my review, all of the wrongful retention cases that you cited in your brief involved an affirmative consent to the initial travel. Am I missing something or is there a case in there that's different? You're not, Your Honor. Our position, though, is that it's still analogous because the Jalisco court on August 30th said that she could have the child. Her having removed the child on August 25th or whenever she actually did was permitted. Essentially, it was consent on the part of the Jalisco court, and we have provided citations that the Jalisco court, not Carmen, was the entity that was exercising custodial rights. It had the right to tell Bertha if or if she not could leave or if her having left was still lawful, permitted, and that August 30th order made it clear that it was. When the October order came out, what was the date that the Jalisco court said that ZFMZ was, in quotes, illegally taken out of the country? I believe that was in the August 11th, sorry, October 11th, 2017 order, Your Honor. What was the date that the Jalisco court said that she was, in quotes, illegally taken out of the country? Wasn't he referring to the latest August 30th or August 25th? That's the August 30th, 2017 order. I believe that is in our appendix exhibit 52. Sorry, my apologies. That's our exhibit one, Your Honor. My apologies. Okay. Can you cite a wrongful retention case where the initial travel involved merely a lack of objection? In which the initial travel had a lack of objection. Right. Which is what I think we've got here. I would cite the case that is C.R. My apologies, Your Honor. It is a, it's in our brief. It is N. Ray C.H., a case out of Ireland in which the father had taken the child outside of the country without the consent of the mother. There had been no adjudication yet. But the court had found that because it had jurisdiction over the custody of the child, that it could make the determination of whether or not that removal was wrongful or not. And so our position is that we have a similar analysis here. Did that, though, deal with a lack of merely a lack of objection? That case? Correct. There was no... My apologies, Your Honor. No, it's good. Did that case deal with the lack of objection? Correct. There's lack of objection on the part. Essentially, it was a case in which custody was being determined and there was no specific order saying that the father could not leave the jurisdiction. The argument was that because of it, there was no one to exert rights of custody since custody had not been established. And in that case, the court had said that the court in Ireland, the court overseeing the jurisdiction of the custodial determination, had rights of custody. A similar situation that we have here. This is a peculiar and sad situation, but I would ask you both with respect to Carmen and the Jalisco Court, what would their answers have been if they had been asked on August the 25th of 2017 that whether Bertha had permission to take ZFMZ to Las Vegas to stay there and go to school? What would their answer have been? Well, I would be hesitant to hypothesize on what they would have said, but I think that the August 30th order is what makes it clear for us. If the court at that time said that Bertha could have, that Bertha had provisional custody of the child, which involves seeing after the child's general welfare, that was set forth in the August 18th order. Being in charge of a child's general welfare includes a right to travel. There was no specific order stating that she could not. Based on the court's response on August 30th, if it was more concerned in regards to her having left, I believe the court would have said immediately return the child and or strip Bertha of her provisional custody. It did neither on August 30th, and therefore I am led to believe that it would be a similar result on August 30th. Isn't it clear that Carmen objected to the child being taken out of Mexico on August 30th? She did on her own, Your Honor, object to it. Our point is that because Bertha had provisional custody of the child, she essentially had, she didn't have standing to quote-unquote object. That was on the part, as a legal conclusion, on the part of the Jalisco court, who specifically said that Bertha was permitted to be outside of the country. Therefore, whether Carmen, as a layman, objected to Bertha being outside of the country is not determinative of the issue and did not commence the one-year clock. The court's August 30th order saying that Bertha was allowed to be outside of the country establishes wrongful retention, and when September 8th came and Bertha had not returned, our position is that is when the clock started, when the wrongful retention was essentially terminated. The organization travel was terminated. When are you saying that wrongful retention began? Wrongful retention began when she did not return the child on September 8th as ordered by the Jalisco court. It essentially, Jalisco court on August 30th said that she had to produce the child and herself at the September 8th hearing. Hence, if she traveled back on, you know, September 5th or September 6th or September 8th, that was her prerogative. As long as she was back in front of the court on September 8th, and when she was not, she didn't. I would point out that the August 30th order, I'm sorry, that the September 8th order states that she essentially gives her more time, that she now has until the October hearing date to return the child. But for purposes of our position, at the very least, it was August 8th, and it could be argued that at that point, it was a September 13th letter by Bertha to the Jalisco court saying that she had no intention of returning the child. It's truly the date upon which wrongful retention occurred since the court technically extended the time to return the child until the next hearing. But I do want to point that out because I think that is important. Do you want to save any of your time, Castle, for rebuttal? Yes, Your Honor. I'll save the last two and a half minutes. Thank you. Very well. Mr. Gordon. Hello, Your Honors. My name is Richard Gordon, counsel for Apolli Bertha Hernandez-Renteria, and may it please the court. Bertha Renteria is the maternal grandmother of the FMZ, and the child who this case revolves around. And for ease, I'll just refer to them as Bertha and Zee respectively. Zee is a beautiful, bright, 10-year-old, almost 11-year-old girl who is deeply and emotionally bonded with her grandmother and who desperately wants to stay in Las Vegas where she was born with her grandmother. Excuse me, counsel. Yes. This is not a custody hearing. The question before the court is whether the petition was filed in a timely fashion. So my question is, did your client, Bertha, ever evidence an intent to return the child to Mexico? Well, Your Honor, in evaluating this is wrong for me. Yes or no? Yeah, did Bertha ever manifest an intent to return the child to Mexico? I think the answer there is no. But Bertha's intent, the only thing I would add, Your Honor, is Bertha's intent is not the relevant inquiry for purposes of this evaluation. The relevant inquiry and the questions that the court posed were right on target to Mr. Mayo. This matter should be affirmed because the Article 12 well-settled defense has been satisfied, and that issue, Your Honor, turns on the question of consent. Okay? Before you get to that, if you're going to part of that, tell us what the definition of wrongful removal versus wrongful retention is. It's an issue of first impression in our court. In this circuit, Your Honor? Yes. I mean, the Ninth Circuit has addressed removal and retention cases. The Moses case, I believe, is cited in the briefing. But in terms of the definition of wrongful removal and wrongful retention, I think the court is right that the Ninth Circuit hasn't yet defined it. But many other courts have. What is the definition of each? What is wrongful removal and what is wrongful retention? Sure. And as I was saying, Your Honor, the definition of wrongful removal and wrongful retention turn on the question of consent. For a wrongful removal action to be present, that is when the child is taken out of the country without the noncustodial parent's permission. And similarly, for a wrongful retention matter, that is where the child is taken out of the country initially with the petitioner's consent. But that consent is then later and subsequently withdrawn. So the predicate question for this court in evaluating the issue of removal or retention is, was there consent by the appellant for removal of Z to Mexico? And we would offer, Your Honor, that the evidence that was presented at trial and in the record was undisputed, that there was no consent by the appellant. And the evidence is based on really three sources. First, evidence of nonconsent is the verified petition itself. Appellant admitted under penalty of perjury that neither she nor the Jalisco court consented to birth and leaving Mexico with Z. Respondent removed Z from Mexico without petitioner or the Jalisco family court's consent or knowledge, paragraph 20 of the petition. Not only did the appellant declare her nonconsent in the petition, but appellant also unambiguously testified at trial that Z was wrongfully taken from Mexico. She didn't leave. She was taken. She was taken. These are words that are strong words of nonconsent. Taking is something nonconsensual. What do we do with what Mr. Mayo mentioned? My understanding is that I'm going to call her Z, child. There's going to be a consultation with a psychologist or someone like that. And that consultation was going to occur more or less in the Las Vegas area. Am I mistaken? You are mistaken only, your honor, that the consultation was contemplated to You are correct, your honor. You are correct. And I think this is a very important point to emphasize. That Bertha was given provisional custody of the child in Mexico for the limited purpose of getting a psychological report. Okay. In the grant of provisional custody, were there any travel restrictions placed on Bertha? Excellent question. Yes, your honor, there were. And I would refer the court to the August 18, 2007, minute order. It appears in the supplemental appendix of record 215. And there, the court clarifies that the scope of the provisional custody, one, to get the psychological exam. And then this provisional custody order specifies geographically, where Bertha, with a specific location, is to be for duration of the custody. It states the stated address. I'm sorry, your honor. So you're saying the order said Bertha had to stay within a specific geographic area other than, I assume it was somewhere in Mexico, right? Yes. Exactly.  It gives a specific address where she resides in Jalisco. 1967 Sierra de Banos Street in Jalisco. And so that's the order that initially grants her provisional custody. And interestingly enough, both Magistrate Hoffman and Judge Navarro cite to that order as giving a restriction on Bertha's travel with the child. Then we get, and I think this is, your honor, the most significant evidence of non-consent. The very next thing that occurs on August 25th, that's the date that Bertha and Zee left Mexico for the United States. Carmen learned of that departure. And what did Carmen do? Immediately went to the Jalisco court. Immediately went to the Jalisco court to complain of the fact that Bertha had taken Zee to the United States. And based on the testimony of the appellant, the Mexican court immediately imposed a formal no travel order that same day. Now, that is not the conduct of someone who, as Mr. Mayo argues today, consented to international travel. That's someone who didn't consent. And that day, August 30th, and that's an important date, your honors have all recognized that that's the day, significantly, that the October 10th, 2018, Article 15 certification letter from the Mexican court to the magistrate in the District of Nevada cites as the date when there was an illegal removal. That, I think, is probably the most decisive evidence, your honor. Article 15 of the convention allows the courts of the place of permanent residence to provide a decision of determination that the removal of her detention was wrongful. And in that letter, the Mexican court says, Mrs. Bertha Jimenez illegally removed said minor from this country violating a hold order decreed on August 30th, 2017. So that August 30th letter, that order, rather, is dispositive. And I think it's very important to note, my friend on the other side has taken the position that the August 30th order actually grants travel rights to Bertha during, internationally even, during the pendency of the custody proceeding. That's a position that was never made or taken previously. But that order, your honor, is very clear. Bertha Jimenez Renteria may not leave the territory of this court's jurisdiction, the first judicial party of the state of Jalisco, accompanied by the mentioned minor. Now, Mr. Mayo wants to use the next provision, without leaving a duly authorized representative, as an affirmative grant of travel rights. But importantly, the Mexican court did not categorically construe that August 30th order that way. In fact, there are multiple orders that are part of the record, your honor, from Mexico. The October 6th, October 2nd, 2017 order. October 11th, 2017. March 8th, 2018. May 18th, 2018. And then subsequently, the final Article 15 certification. All of those specify that the child was illegally removed from the country in violation of the August 30th travel ban. So the Mexican court itself makes very clear, beyond just the August 10th letter to the district court, but in every ensuing order, it cites this August 30th travel restriction. So the idea that there was consent provided by the August 30th order for international travel is belied by the Mexican court records themselves. And I would say also, your honor, the conduct of appellant here suggests, lest we forget, I think that the issue is always going to be consent. Okay? And consent of the petitioner. Now, we have actions of the petitioner that are pretty express. In the petition, there was no consent. In her trial testimony, she didn't leave. She was taken. And in the very action, when Carmen discovered that Bertha had taken Z to the United States, the first act was to go to the Mexican court and complain of that fact. And that same day have an order inserted. So that's not conduct that speaks to consent of the petitioner. Just the opposite. And so we think that the evidence before the court, and your honor, this is, as counsels can see, these factual questions are determined by or evaluated under a clear error standard. You know, did the district court have substantial evidence before it to say that this was a removal as of August 30th? And under that standard, when you take the petition itself, the testimony of the petitioner, and these unequivocal orders from Mexico, as well as the conduct of account, you see non-consent. And that is sufficient to not disturb the finding of the district court. It's a case off-cited for this proposition from the circuit, the Perkins case. To be clearly erroneous, the decision must strike us as wrong with the force of a five-week-old unrefrigerated dead fish. Your honor, there is no dead fish here. The evidence substantially supports what the district court found. And it can be undone or shouldn't be undone because there is no clear error. And importantly, I'm running out of time, so I just want to mention briefly, your honor, the alternative grounds. The district court didn't have to reach. There were multiple defenses under the convention that were asserted in the trial below before the district court. The district court didn't have to reach all of the issues, and it settled on the well-settled defense. But we do have also a defense under Article 13B, the grave risk defense. Under this defense, the court can deny a petition if there is grave risk of psychological harm or if you put the child in an intolerable situation. Here, returning Z to Mexico would place her in an intolerable situation by requiring her to accept support from OFAC-designated narcotics traffickers in violation of federal law. I assume that were we to reach the Article 13 issue, that we would have to send this back to the district court to have a hearing, right? I would say no, only to the extent, your honor, that I don't think you need to reach it in light of the well-settled defense. But this is a question of law. The court can take judicial notice of the indictments and the treasury records and include the rule, but it doesn't, yeah. Thank you, your honor. Very well. Thank you for your argument. I appreciate it. So, Mr. Mayo, you have some rebuttal time. Thank you, your honor. I want to address a few points. In regards to the issue of consent, it needs to be made clear that Carmen was not in a position, she did not have standing, to object. She was a party to the matter and did not have provisional custody. The party that had standing at that point was the Jalisco court, and that is the court that committed the termination. It found, specifically, as cited by my honorable opposing counsel, that Bertha could leave the territory with the child, accompanied by the minor, the mentioned minor. She could, or she could not, without leaving a duly authorized representative to take part in this trial and these proceedings. And that is the termination. We got directly contradictory statements by you and your opposing counsel. He says the August 30th order of the Jalisco family court makes clear that while she resided at a particular spot, I gather, in Jalisco, there was no permission whatsoever to leave Mexico. Do you agree with that description? I only to the extent that it would take the entire time that Carmen, sorry, that Bertha had her to conduct the evaluation. If she had her evaluated in a day, met with a psychiatrist and went through one day, she then had another week or two weeks to do with her as she wished because she had provisional custody. And that was the right, among other rights, to travel, including especially since there was no specific order saying she could not travel a child. If that was the intent of the Jalisco court, I believe that would have made it clear. In regards to the August 18th order, it did not set forth a restriction as claimed. It simply states that Bertha had provisional custody and it listed her address. It did not state that she was relegated to having the child at that address during the time of her provisional custody. Counsel, isn't the question when your client, your client's Carmen, right? Yes, Your Honor. When your client was aware that the child had been removed and certainly if she went to the Jalisco court, whether she had standing representation or not, she went there complaining that the child had been removed. And if that's the trigger date, you're outside the statute, right? If that was a trigger date, but again, she simply went to the court as any litigant, an interested party in the case. It was upon the court to determine whether or not it permitted her to do so. And since there was no order saying she couldn't, and since at least the court said that she could, was the restriction of having a representative, Carmen's position really wasn't relevant. It was one of a layman. I see my time is up. Do either of my colleagues have additional questions of either counsel? No. I do. If not, we thank you both for counsel for your helpful argument. The case of Castro versus Renteria is concluded and submitted.
judges: Fisher, Hawkins, M. Smith